IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD M. BURTON,

    Plaintiff,                            No. CIV S-10-1279 DAD

    vs.

MICHAEL J. ASTRUE,                  <u>ORDER</u>
Commissioner of Social Security,

    Defendant.
_____/

        This social security action was submitted to the court without oral argument for ruling on plaintiff's amended motion for summary judgment and defendant's cross-motion for summary judgment. For the reasons explained below, plaintiff's motion is granted in part and denied in part, the decision of the Commissioner of Social Security (the Commissioner) is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

        On September 16, 2004, plaintiff filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act) and for Supplemental Security Income (SSI) under Title XVI of the Act, alleging disability beginning on July 1, 2003. (Transcript (Tr.) at 141.) Plaintiff's applications were denied initially on December 6, 2004, and upon reconsideration on June 24, 2005. (<u>Id</u>. at 61, 68.) A hearing was held before an

1

Administrative Law Judge (ALJ) on October 19, 2006.  (Id. at 448-97.)  Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision issued on February 26, 2007, the ALJ found that plaintiff was disabled but that his disability began after the date he was last insured.  (Id. at 45-52.)  On February 7, 2008, the Appeals Council vacated the ALJ's decision and remanded the matter for further proceedings.  (Id. at 59.)

A second administrative hearing was held on January 13, 2009.  (Id. at 498.)  Plaintiff was again represented by counsel and testified at the administrative hearing.  In a decision issued on July 9, 2009, the ALJ found that plaintiff had been disabled from December 5, 2005, to January 19, 2009, but not before or after that period of time.  (Id. at 24-33.)

The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act on September 30, 2005.
>
> 2. The claimant has not engaged in substantial gainful activity since July 1, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).
>
> 3. At all times relevant to this decision, the claimant has had the following severe impairments: depression and low back pain without objective findings consistent with pain.  (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. Prior to December 5, 2005, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).
>
> 5. Prior to December 5, 2005, the date the claimant became disabled, the claimant had the residual functional capacity to perform the light work as defined in 20 CFR 404.1567(b) and 416.956(b) except for the following limitations: moderate limitations affecting social functioning.
>
> 6. Prior to December 5, 2005, the claimant was unable to perform past relevant work (20 CFR 404.1565 and 416.965).
>
> 7. The claimant was born on April 29, 1957 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

/////

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to December 5, 2005, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to December 5, 2005, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 4041560(c), 404.1566, 416.960(c), and 416.966).

11. From December 5, 2005 through January 19, 2009, the period during which the claimant was disabled, the severity of the claimant's depression equals the criteria of section 12.04, Affective disorders, of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

12. The claimant was under a disability, as defined by the Social Security Act, from December 5, 2005 through January 19, 2009 (20 CFR 404.1520(d) and 416.920(d)).

13. Medical improvement occurred as of January 20, 2009, the date the claimant's disability ended (20 CFR 404.1594(b)(1) and 416.994(b)(1)(i)).

14. Beginning on January 20, 2009, the claimant has not had an impairment or combination of impairments that meets or medically equals one fo the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2) and 416.994(b)(5)(i)).

15. The medical improvement that has occurred is related to the ability to work because the claimant no longer has an impairment or combination of impairments that meets or medically equals a listing (20 CFR 404.1594(c)(3)(i) and 416.994(b)(2)(iv)(A)).

16. After careful consideration of the entire record, the undersigned finds that, beginning on January 20, 2009, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations: moderate limitations affecting social functioning.

17. Beginning on January 20, 2009, the claimant has been unable to perform past relevant work (20 CFR 404.1565 and 416.965).

/////

18. The claimant was born on April 29, 1957 and was 52 years old, which is defined as a (sic) an individual closely approaching advanced age, on January 20, 2009, the date disability ended (20 CFR 404.1563 and 416.963).

19. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

20. Beginning on January 20, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning on January 20, 2009, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

22. The claimant's disability ended on January 20, 2009 (20 CFR 404.1594(f)(8) and 416.994(b)(5)(vii).

23. The claimant was not under a disability within the meaning of the Social Security Act at any time through September 30, 2005, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Id. at 25-33.)

On March 24, 2010, the Appeals Council denied plaintiff's request for review of the ALJ's July 9, 2009 decision. (Id. at 8-10.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on May 24, 2010.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record as a whole and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).

A reviewing court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. Jones, 760 F.2d at 995. The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

In determining whether or not a claimant is disabled, the ALJ should apply the five-step sequential evaluation process established under Title 20 of the Code of Federal Regulations, Sections 404.1520 and 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

1  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

2        The claimant bears the burden of proof in the first four steps of the sequential
3  evaluation process. Yuckert, 482 U.S. at 146 n.5. The Commissioner bears the burden if the
4  sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098
5  (9th Cir. 1999).

6        **APPLICATION**

7        Plaintiff argues that the ALJ committed the following three principal errors in
8  finding him not to be disabled: (1) the ALJ improperly rejected the opinions of plaintiff's treating
9  psychiatrist and a non-examining psychiatrist without a legitimate basis for so doing; (2) the ALJ
10 improperly rejected plaintiff's own testimony regarding his subjective complaints without a
11 convincing reason for so doing; and (3) the ALJ's finding that plaintiff's disability ceased on
12 January 20, 2009, is not supported by substantial evidence. Each of these arguments are
13 addressed below, although not in the order presented by plaintiff.

14 **I.     Medical Opinions**

15       The weight to be given to medical opinions in Social Security disability cases
16 depends in part on whether the opinions are proffered by treating, examining, or nonexamining
17 health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).
18 "As a general rule, more weight should be given to the opinion of a treating source than to the
19 opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because
20 a treating doctor is employed to cure and has a greater opportunity to know and observe the
21 patient as an individual. Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.
22 Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

23       A treating physician's uncontradicted opinion may be rejected only for clear and
24 convincing reasons, while a treating physician's opinion that is controverted by another doctor
25 may be rejected only for specific and legitimate reasons supported by substantial evidence in the
26 record. Lester, 81 F.3d at 830-31. The ALJ, however, need not give weight to a treating

physician's conclusory opinion supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830. An examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons, and when an examining physician's opinion is controverted by another doctor's opinion, the examining physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Id. at 830-31. Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." Id. at 831 (emphasis in original).

Here, plaintiff contends that the ALJ failed to state clear and convincing reasons for rejecting the April 11, 2008 opinion of his treating psychiatrist, Dr. Joel Fine. On April 11, 2008, Dr. Fine completed a Psychiatric Review Technique form indicating that from May 12, 2004 to April 11, 2008, plaintiff had a "[m]arked," degree of limitation with respect to the restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Tr. at 422.) Dr. Fine also indicated that during this period of time plaintiff had suffered three repeated episodes of decompensation, each of extended duration. (Id.)

With respect to the opinion of plaintiff's treating psychiatrist, Dr. Fine, the ALJ stated:

> As for the opinion evidence, the undersigned rejects the opinions of Dr. Fine and Ms. Cohen, in so far as they relate to the period prior to December 5, 2005. Ms. Cohen states that she first saw the

claimant on December 5, 2005, but that his symptoms were already in place prior to that time (Exhibit 11F3). Dr. Fine opined that the claimant would have marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, and pace, and three repeated episodes of decompensation of extended duration, from May 12, 2004 to the present.

The undersigned notes that Dr. Fine and Ms. Cohen are assessing the claimant's status prior to a time when they had first seen the claimant. However, their opinions on claimant's symptoms and limitations are inconsistent with the medical evidence of record, as discussed above. Therefore the undersigned gives little weight to these opinions. The undersigned credits the opinion of Dr. Shapiro, the medical expert, who reviewed the claimant's entire medical file, and who is explicitly basing his opinion on the documents in that file.

(Id. at 28.)

Contrary to the ALJ's statement, the record establishes that when Dr. Fine rendered his April 11, 2008 opinion, he had been treating plaintiff for almost a year. (Id. at 428.) In this regard, Dr. Fine was especially qualified to form a conclusion as to plaintiff's functional capacities and limitations. See Lester, 81 F.3d at 833 ("The treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.").

Moreover, the ALJ rejected the opinion of treating psychiatrist Dr. Fine while crediting the opinion of Dr. Shapiro, a state agency psychiatrist. Dr. Shapiro, who did not examine plaintiff, opined that plaintiff's became disabled in April of 2006, based on a progress note from plaintiff's therapist, Lynn Cohen, indicating that plaintiff needed psychiatric care.[1] (Id. at 509-10.) "By rule, the Social Security Administration favors the opinion of a treating

---

[1] The court notes that in her April 18, 2006 Mental Residual Functional Capacity Assessment of plaintiff, Ms. Cohen stated that though she first began seeing plaintiff on December 5, 2005, his "symptoms were already in place before then." (Tr. at 358.)

physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). See also Reddick, 157 F.3d at 725 ("The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant."). As noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1202 (9th Cir. 2008) (quoting Lester, 81 F.3d at 831). Here, the ALJ's reliance on the opinion of a non-treating, nonexamining agency psychiatrist is legally flawed. Such reliance violates the general rule that more weight should be given to the opinion of a treating source than to the opinion of a doctor who did not treat the claimant and fails to recognize that a treating doctor has a greater opportunity to know and observe the patient as an individual.[2]

Finally, though the ALJ rejected Dr. Fine's opinion because he found it to be inconsistent with the medical evidence of record, the ALJ failed to discuss the opinion of Dr. Elizabeth Harrison, who like Dr. Shapiro, was also a nonexamining state agency psychiatrist. On December 1, 2004, Dr. Harrison completed a Psychiatric Review Technique form. (Tr. at 291.) Therein, Dr. Harrison indicated that from July 1, 2003 through December 1, 2004, plaintiff had a "[m]oderate," degree of limitation with respect to the restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Id. at 301.) In this regard, Dr. Harrison's opinion is substantially consistent with that of plaintiff's treating psychiatrist, Dr. Fine.

The ALJ also erred in failing to give any reason for disregarding Dr. Harrison's opinion. See Shafer v. Astrue, 518 F.3d 1067, 1069-70 (9th Cir. 2008) (noting that an ALJ's

---

[2] Moreover, as noted by the Appeals Council in its February 7, 2008 decision vacating the ALJ's initial decision, "[t]here was no appropriate rationale for the conclusion that the date of treatment was the first date of onset. In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity (Social Security Ruling 83-20)." (Tr. at 59.)

silent disregard of a nonexamining physician's opinion "contravened governing regulations requiring him to . . . evaluate every medical opinion received" and was legal error); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (holding that the ALJ must explain why "significant probative evidence has been rejected"); 20 C.F.R. § 404.1527(d), (f) (stating that nonexamining source opinions are medical opinions that the ALJ must consider and weigh using the factors enumerated in that section); SSR 96-6p (stating that an ALJ "may not ignore" state agency medical consultant opinions "and must explain the weight given to these opinions in their decisions").

The court concludes that there was not substantial evidence in the record to support the ALJ's decision to reject the April 11, 2008 opinion of plaintiff's treating psychiatrist, Dr. Fine. Moreover, the court concludes that the ALJ erred in failing to address the December 1, 2004 opinion of state agency psychiatrist Dr. Harrison. Accordingly, the court finds that plaintiff is entitled to summary judgment on his claim that the ALJ improperly rejected the opinion of his treating psychiatrist Dr. Fine and erred in failing to discuss in his decision the opinion of non-examining psychiatrist Dr. Harrison.

## II. Plaintiff's Testimony

It is well established that once a claimant has presented medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of his or her symptoms merely because the symptoms are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In evaluating a claimant's subjective testimony regarding the severity of his symptoms, the ALJ may, of course, consider the presence or absence of supporting objective medical evidence, along with other factors. Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1284. However, "'the ALJ can reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir.

1  2007) (quoting Smolen, 80 F.3d at 1281).  See also Light, 119 F.3d at 792.  Thus, absent
2  affirmative evidence of malingering, the reasons for rejecting a claimant's testimony must be
3  clear and convincing.  Morgan, 169 F.3d at 599.
4        Here, the ALJ found, and the record establishes, that plaintiff's medically
5  determinable impairments could reasonably be expected to produce his alleged symptoms of pain
6  and depression.  Accordingly, the ALJ was required to evaluate the intensity, persistence, and
7  limiting effect of plaintiff's symptom to determine the extent to which they limited his ability to
8  engage in basic work activities.
9        The ALJ did make findings with respect to plaintiff's credibility, finding that
10 plaintiff's subjective complaints were "not credible prior to December 5, 2005," to the extent
11 they were inconsistent with the ALJ's residual functional capacity assessment.  (Tr. at 26.)  The
12 ALJ found that there was "little objective evidence supporting [plaintiff's] subjective claims."
13 (Id.)  However, as noted above, an ALJ may not discredit the claimant's testimony as to the
14 severity of his or her symptoms merely because the symptoms are unsupported by objective
15 medical evidence.  Reddick, 157 F.3d at 722.
16       The ALJ also found that plaintiff's "activities of daily living" did "not support
17 [his] credibility."  (Tr. at 27.)  In this regard, that ALJ noted that a January 3, 2006, progress note
18 indicated that in December 2005 plaintiff was able to garden for "a few hours."  (Id.)  However,
19 it is well established that social security claimants need not be "utterly incapacitated to be
20 eligible for benefits."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  See also Webb v.
21 Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.
22 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain
23 daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not
24 in any way detract from her credibility as to her overall disability .").  In general, the
25 Commissioner does not consider "activities like taking care of yourself, household tasks,
26 hobbies, therapy, school attendance, club activities, or social programs" to be substantial gainful

activities. 20 C.F.R. § 404.1572(c). See also 20 C.F.R. § 404.1545(e). Moreover, in stating only that the progress note indicated that plaintiff had gardened for a few hours in December of 2005, the ALJ failed to provide the full quote from the progress note and failed to reflect the true importance of the entry. The full line of text from the December 5, 2005 progress note reads "little bit of gardening a few hrs – then on couch 3 days." (Tr. at 410.) Thus, it is clear that the record, as fairly characterized, reflect that plaintiff engaged in a few hours of gardening in December of 2005 and as a result was couch-bond for three days and does not detract from plaintiff's credibility as to the intensity, persistence, and limiting effects of the pain from which he suffers.

Finally, with respect to plaintiff's depression and anxiety, the ALJ found that there was "no evidence in the record that the claimant's symptoms, prior to December 5, 2005, produce greater functional limitations than noted in the residual functional capacity" found by the ALJ. (Id. at 25, 27.) In this regard, the ALJ found that prior to December 5, 2005, plaintiff had the residual functional capacity to perform light work with *only* moderate limitations affecting social functioning. (Id. at 25, 27) (emphasis added). This finding, however, ignores the April 11, 2008 opinion of Dr. Fine and the December 1, 2004 opinion of Dr. Harrison, both of whom found that plaintiff suffered limitations of a moderate or marked degree in his restriction of activities of daily living and ability to maintain concentration, persistence or pace, in addition to limitations affecting social functioning. (Id. at 301, 422.)

In sum, the court concludes that the reasons given by the ALJ for not crediting plaintiff's subjective testimony for the time prior to December 5, 2005 are not clear and convincing. Plaintiff is therefore entitled to summary judgment on his claim that the ALJ erred in failing to credit plaintiff's testimony regarding his pain and functional limitations.

**III.     Disability Ceased on January 20, 2009**

Plaintiff argues that the ALJ's finding that plaintiff's disability ended on January 20, 2009, is not supported by substantial evidence. Plaintiff contends that the ALJ's

determination was based on the opinion of Dr. Raymond Yee, who examined plaintiff on January 19, 2009, and completed a Medical Source Statement of Ability to do Work-Related Activities.

Referring to Dr. Yee's report, the ALJ noted that Dr. Yee found that plaintiff:

> . . . could accept instructions from supervisors and interact with coworkers and the public, can deal with stress at work, can perform work activities on a constant basis, and can maintain regular attendance in the workplace and complete a normal workday and workweek. The examiner felt the claimant would have no functional limitations resulting from his mental impairments (Exhibit 23F6-7).

Plaintiff notes that Dr. Yee also assessed plaintiff's Global Assessment of Functioning[3] ("GAF") rating at 60, which plaintiff argues is not consistent with the functional capabilities found by Dr. Yee in the quoted language above.

However, plaintiff has not cited any legal or statutory authority in support of this argument. As, noted above, an examining physician's uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing reasons. Lester, 81 F.3d at 830-31. Here, plaintiff has not presented clear or convincing reasons for rejecting Dr. Yee's uncontradicted opinion.

Accordingly, the court finds that defendant is entitled to summary judgment in his favor as to plaintiff's claim that the ALJ's finding that plaintiff's disability ended on January 20, 2009 is not supported by substantial evidence.

## CONCLUSION

The decision whether to remand a case for additional evidence or to simply award benefits is within the discretion of the court. Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir. 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). The Ninth Circuit Court of Appeals has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011).

13

would be served by further administrative proceedings, or where the record has been thoroughly developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988)). This rule recognizes the importance of expediting disability claims. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001); Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at 1401.

Here, plaintiff filed his applications for DIB and SSI over seven years ago. The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 1, 2003. (Tr. at 25.) Moreover, when the opinions of plaintiff's treating psychiatrist, Dr. Fine, and the non-examining state agency psychiatrist, Dr. Harrison, are given the proper weight, the evidence of record demonstrates that plaintiff was disabled as of July 1, 2003.

In this regard, the December 1, 2004, Psychiatric Review Technique form, issued by Dr. Harrison indicates that from July 1, 2003 through December 1, 2004 plaintiff experienced a moderate degree of limitation with respect to the restriction of activities of daily living, difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace. (Id. at 301.) According to the Vocational Expert who testified at plaintiff's October 19, 2006 administrative hearing, there are "probably not" any jobs that could be performed by plaintiff at the residual functional capacity found by the ALJ with such limitations.[4] (Id. at 495.) Moreover, Dr. Fine indicated that as of May 12, 2004, plaintiff's limitations in these areas were even more prominent, worsening from a moderate degree of limitation to a marked degree of limitation. (Id. at 422.)

Accordingly, the court finds it appropriate to remand this case with the direction to award benefits on the ground that plaintiff had been under a disability, as defined by the Social Security Act, beginning on July 1, 2003, the alleged onset date, through January 20, 2009, the date of medical improvement. See Lingenfelter v. Astrue, 504 F.3d 1028, 1041 (9th Cir. 2007)

---

[4] A Vocational Expert did not testify at plaintiff's January 13, 2009 administrative hearing.

(finding the claimant entitled to benefits where he was required to lie down two or three times each day for up to forty-five minutes due to pain and where the vocational expert testified that there were no jobs available in the national economy in light of that limitation); <u>Moore v. Comm'r of Soc. Sec. Admin</u>, 278 F.3d 920, 925 (9th Cir. 2002) (remanding for payment of benefits where the ALJ improperly rejected the testimony of the plaintiff's examining physicians); <u>Ghokassian</u>, 41 F.3d at 1304 (awarding benefits where the ALJ "improperly discounted the opinion of the treating physician").

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. No. 21) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (Doc. No. 23) is granted in part and denied in part;

3. The Commissioner's decision is reversed; and

4. This case is remanded with the direction to award plaintiff benefits from July 1, 2003 through January 20, 2009.

DATED: March 13, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
Ddad1/orders.soc sec/burton1279.order